KATHY KLEIN ET AL. *v.* CITY OF STAMFORD ET AL.

SUPERIOR COURT    JUDICIAL DISTRICT OF    FILE No. 129999S
STAMFORD-NORWALK

Memorandum filed June 13, 1994

*Gulash & Fleischmann,* for the plaintiffs.

*Ryan, Ryan, Johnson, Clear & Deluca,* and *corporation counsel of the city of Stamford,* for the defendants.

MOTTOLESE, J. The plaintiff Kathy Klein, in her individual capacity and in her capacity as next friend for her child, Inez DeJesus, the minor plaintiff, filed a seven count revised complaint against the defendants, two Stamford police officers and their employer, the city of Stamford. In count one of the revised complaint Klein alleges that the officers were negligent in not arresting Roger Johnson, her former boyfriend. She asserts that Johnson assaulted her on February 11, 1992, and, that on February 13, 1992, she reported the incident to one of the officers at their direction. Klein alleges further that both officers were negligent in failing to arrest Johnson and in failing to prevent his

assault upon her on February 13, 1992. Count two of the complaint alleges that the officers violated Klein's constitutional rights of substantive due process under the fourteenth amendment to the United States constitution for which 42 U.S.C. § 1983 provides a remedy. She claims that the officers violated their duties to investigate the incident, to arrest the perpetrator and to safeguard her under the imperatives of General Statutes § 46b-38b, specifically subsection (e) of that statute. Klein alleges in count three that the officers violated her rights under article first, § 8, of the constitution of Connecticut. Count four alleges a violation of her federal substantive due process rights by the Stamford police department as distinguished from its officers and the city, and also predicates the cause of action on 42 U.S.C. § 1983. This count identifies the violation as the department's failure to develop and to implement guidelines under § 46b-38b (e). Count five raises the same claim but bases it upon the Connecticut constitution. Count six purports to state a claim, by the minor plaintiff as a bystander, of negligent infliction of emotional distress.

The defendants have moved to strike counts two through six on the grounds that none of them sets forth a claim upon which relief can be granted. In a case like this it is helpful to begin by stating the parameters of review that apply to a motion to strike. When ruling on a motion to strike the court is limited to the facts alleged in the complaint. *Gordon* v. *Bridgeport Housing Authority,* 208 Conn. 161, 170, 544 A.2d 1185 (1988). Next, the facts alleged in the complaint must be construed in a manner most favorable to the plaintiff; *Westport Bank & Trust Co.* v. *Corcoran, Mallin & Aresco,* 221 Conn. 490, 495, 605 A.2d 862 (1992); and the motion admits the truth of all allegations that do not constitute legal conclusions. *Verdon* v. *Transamerica Ins. Co.,* 187 Conn. 363, 365, 446 A.2d 3 (1982).

Finally, if facts provable in the complaint support a cause of action; *Westport Bank & Trust Co.* v. *Corcoran, Mallin & Aresco,* supra, 495; or if any part of the complaint is valid; *Doyle* v. *A.P. Realty Corp.,* 36 Conn. Sup. 126, 414 A.2d 204 (1980); the motion to strike must be denied.

I

## FEDERAL CONSTITUTIONAL CLAIMS

The defendants' attack on these causes of action is based upon the decision of the United States Supreme Court in *DeShaney* v. *Winnebago County Social Services Dept.,* 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). The defendants argue that a police department's failure to protect an individual against violence perpetrated by a private person is not a violation of the due process clause[1] of the fourteenth amendment and, therefore, does not trigger a cause of action under § 42 U.S.C. § 1983.[2] The plaintiffs, who also rely on *DeShaney,* contend that the explicit mandatory language of § 46b-38b (a)[3] conferred a liberty and property interest upon Klein that was protected by the due process clause.

---

[1] The due process clause of the fourteenth amendment of the United States constitution provides in pertinent part: "[N]o state shall . . . deprive any person of life, liberty, or property, without due process of law. . . ."

[2] Section 1983 of title 42 of the United States Code provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured . . . ."

[3] General Statutes § 46b-38b (a) provides, in pertinent part: "Whenever a peace officer determines upon speedy information that a family violence crime . . . has been committed within his jurisdiction, he shall arrest the person . . . suspected of its commission and charge such person . . . with the appropriate crime."

To establish a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived the person of rights, privileges or immunities secured by the constitution or laws of the United States. *Gorra Realty, Inc.* v. *Jetmore,* 200 Conn. 151, 165, 510 A.2d 440 (1986). There is no dispute that the defendant police officers were acting under color of state law at all times alleged in the complaint. The issue then is whether the complaint alleges facts that state a claim that the conduct of these two defendants deprived Klein of the constitutionally protected rights conferred on her by § 46b-38b.

In *Deshaney* v. *Winnebago County Social Services Dept.,* supra, 489 U.S. 189, a child and his mother brought an action under 42 U.S.C. § 1983 against the county department of social services alleging that the department had deprived the child of due process of law by failing to intervene and to protect him from violence perpetrated against him by his father. The court held that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." Id., 195. The court left open the question of whether the Wisconsin child protection statutes gave the plaintiff an "entitlement" to receive protective services in accordance with their terms. Id., 196. Thus, *DeShaney* involved a liberty interest rather than a property interest and implicated the substantive component of the due process clause rather than the procedural component. This court, therefore, is required to determine whether under *DeShaney,* its progeny or under any other body of case law, the statute in ques-

tion creates either a liberty or a property interest in Klein that is entitled to protection under the substantive component of the due process clause of the fourteenth amendment. *DeShaney* v. *Winnebago County Social Services Dept.*, supra, 196–97, stands for the proposition that the language of the due process clause cannot fairly be extended to impose an affirmative obligation on the state to ensure that those interests (liberty or property) do not come to harm through the violent acts of private individuals.

SUBSTANTIVE LIBERTY INTEREST

"There is no question that a physical beating by one who has no privilege of inflicting such corporal punishment intrudes on the victim's liberty interests. . . . Where the beating has been inflicted by private individuals, however, there is a question as to whether state officials may be held accountable under federal law." (Citations omitted.) *Dwares* v. *New York*, 985 F.2d 94, 98 (2d Cir. 1993).

The same court in *Ying Jing Gan* v. *New York*, 996 F.2d 522, 533 (2d Cir. 1993), explains that *DeShaney* recognized two exceptions to the general rule: (a) the special relationship exception, and (b) the increase in vulnerability exception. Under exception (a), the court indicated that some sort of custodial relationship was essential either between the government and the victim or the government and the perpetrator. Id. Under exception (b), the government must have created or increased the danger to the victim. Id. The court concluded by stating that the "[p]laintiffs have not called to our attention any case . . . and we are aware of none, in which the lodging of a complaint with law enforcement officials . . . has been held . . . to cre-

ate a relationship that gives the complaining witness a constitutional right to protection . . . ." Id., 534.

In *Dwares* v. *New York,* supra, 985 F.2d 99, the court stated that it would "read the *DeShaney* Court's analysis to imply that . . . an allegation simply that police officers had failed to act upon reports of past violence would not implicate the victim's rights under the Due Process Clause . . . ." This is quite different from a situation in which police officers assist in creating or increasing the danger to the victim."

In *Freeman* v. *Ferguson,* 911 F.2d 52 (8th Cir. 1990), a woman was killed by her estranged husband after the police chief had directed his officers to ignore her pleas because the husband was the chief's friend. In *Freeman,* the court found the performance of an affirmative act on the part of the chief. Id., 54. "Without such affirmative actions on the part of the chief of police, the danger faced by the [victim] would have arguably been less." Id., 55.

Most recently, in *Pitchell* v. *Callan,* 13 F.3d 545 (2d Cir. 1994), the plaintiff alleged that off-duty police officers violated his substantive due process rights by not attempting to stop another off-duty officer from shooting and injuring him. The plaintiff based the allegation on a police regulation that required police intervention when murder is threatened.[4] Thus, the plaintiff argued that whenever this threat occurred, the defendant automatically assumed a duty status to the plaintiff and was mandated by the regulation to take affirmative protective action. Id., 549. In applying *DeShaney,* the court found that the other off-duty police officer was acting

---

[4] The relevant Hartford police department regulation provided as follows: "When serious crimes are threatened, such as murders or attacks upon women, it is the duty of the policeman to go to the assistance of the victim for the purpose of preventing crime. If help from other police can be called without involving delay this should be done; under no circumstances should the officer wait for such help irrespective of the personal danger involved."

as a private citizen when he threatened and later fired the gun at the plaintif. Id., 548. So even though the regulations of the Hartford police department made it the affirmative duty of the other officers to assist the victim "for the purpose of preventing crime," the defendants' failure to do so did not violate due process. Id., 549. Other federal circuits have followed that court's interpretation of *DeShaney*.

In *Hynson* v. *Chester,* 731 F. Sup. 1236 (E.D. Pa. 1990), the victim was murdered by her former boyfriend one day after police were called to her home to investigate an incident involving the same perpetrator. A protective order had been in effect previously but had lapsed. In *Hynson,* the court interpreted *DeShaney* as limiting the responsibility of the state to those situations in which an individual is in the custody of the state and is, therefore, unable to act on his own behalf. The court stated that "[w]hen the State . . . so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses . . . the Due Process Clause." (Internal quotation marks omitted.) Id., 1239.

*Brown* v. *Grabowski,* 922 F.2d 1097 (3d Cir. 1990), involved facts strikingly similar to those presented here. In *Brown,* the victim was murdered by her boyfriend. On a prior occasion the boyfriend had held the victim hostage for three days during which he repeatedly threatened and sexually assaulted her. The victim's family reported this event to the police, who did nothing. The plaintiff claimed that but for the inaction of the police, the victim's death would not have occurred. In affirming the trial court's granting of the defendant's motion for summary judgment, the court held that under *DeShaney,* failure to take affirmative action to protect the victim from the actions of a third

person will not, in the absence of a custodial relationship between the state and the victim, support a civil rights claim. Id., 1113. The plaintiff's argument in *Brown* differs only slightly from that made by Klein in the present case. In *Brown,* the plaintiff attempted to extend *DeShaney* to a noncustodial situation, namely, to her constitutional right to access to the courts accorded her by the New Jersey Domestic Abuse Act. The court would not allow it. The court rejected the plaintiff's argument that the New Jersey Domestic Violence Act created a special relationship between the victim and the police; *Brown* v. *Grabowksi,* supra, 115–16; distinguishing the situation in that case from that which existed in *Cornelius* v. *Highland Lake,* 880 F.2d 348 (11th Cir. 1989), cert. denied sub nom. *Spears* v. *Cornelius,* 494 U.S. 1066, 110 S. Ct. 1784, 108 L. Ed. 2d 785 (1990). In *Cornelius,* the plaintiff was a town clerk who was required to work in the town hall where a prison work crew also worked. The prisoners held the plaintiff hostage and threatened to assault her sexually. In finding a violation of substantive due process, the court reasoned that the state placed the prisoners in the plaintiff's work environment and concluded that the state and the town combined to create a quasi-custodial relationship that gave rise to a protected liberty interest. Id., 359.

Similarly, in *Dawson* v. *Milwaukee Housing Authority,* 930 F.2d 1283 (7th Cir. 1991), the court refused to extend *DeShaney* to find a due process violation against a housing authority. In *Dawson,* the defendant housing authority failed to remove from a housing project either the plaintiff or the perpetrator after the perpetrator had made threats against the plaintiff and had been placed under a court order of protection. The plaintiff argued that by reason of her poverty, the landlord-tenant relationship placed her in a quasi-custodial relationship. The court rejected the plaintiff's

argument, finding instead, that no custodial relationship existed between the plaintiff and the defendant. Id., 1285.

In *Losinski* v. *Trempealeau,* 946 F.2d 544 (7th Cir. 1991), the same court limited the "special relationship" exception carved out in *DeShaney* to either involuntary commitment and subjection to risk or state creation of the danger itself. The government agent's private knowledge of the perpetrator's dangerous propensities and failure to act were deemed insufficient. Id., 551.

The argument made by the plaintiffs in *Philadelphia Police & Fire Assn.* v. *Philadelphia,* 874 F.2d 156 (3d Cir. 1989), is similar in some respects to the argument made by Klein in the present case. In *Philadelphia Police & Fire Assn.,* the plaintiffs, as a class, claimed that they were harmed by the state's failure to maintain services for the mentally retarded who lived at home. That court intepreted *DeShaney* as rejecting the contention that merely because the state knows of an individual's plight and offers assistance to that individual, a special relationship is created that obligates the state to protect or to care for the individual. Id., 167. In *DeShaney,* however, as in the present case, the harm of which the plaintiffs complained was caused by a private individual.

## Substantive Property Interest

Klein claims further that she enjoys a property interest under the due process clause of the fourteenth amendment of the United States constitution upon § 46b-38b but has failed to provide any analysis whatsoever in support of this theory. While the court is able to identify for itself the property interest, or "entitlement" as it is called, by deduction, Klein herself has failed to identify any specific entitlement that she claims has been violated. See *West Farms Associates* v. *State Traffic Commission,* 951 F.2d 469 (2d Cir.

1991). An entitlement has been defined as a "legally enforceable interest in receiving a governmentally conferred benefit, the initial receipt or termination of which is conditioned upon the existence of a controvertible and controverted fact." (Internal quotation marks omitted.) *Doe By Nelson* v. *Milwaukee County,* 903 F.2d 499, 503 (7th Cir. 1990). In *Board of Regents* v. *Roth,* 408 U.S. 564, 576, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972), the United States Supreme Court gave a simpler definition when it said that the property interest protected by the due process clause "is a safeguard of the security of interests that a person has already acquired in specific benefits." It occurs to this court that Klein may assume that she has certain specific entitlements under the statute. Among these could be (a) the right to bodily integrity, (b) the right not to be required to incur medical bills as a result of the beating, (c) the right not to be forced to engage and to pay for the services of an attorney to redress the wrong, (d) the right to have the perpetrator arrested, (e) the right to have the perpetrator held in custody or incarcerated, and (f) a generalized right to police protection.

In *Hynson* v. *Chester,* supra, 731 F. Sup. 1236, the plaintiff claimed a due process violation based on the Pennsylvania Protection From Abuse Act. The court held that there was nothing in the Pennsylvania Protection From Abuse Act that entitled the plaintiff to an immediate arrest for violence. Id., 1240. The same is true with respect to § 46b-38b. Clearly, the statute requires arrest upon speedy information but does not require that the arrest be made within a prescribed period of time.

From an analysis of the possible entitlements mentioned above, it is clear that not (a), (b) nor (c) satisfy the definition of an entitlement because none is a governmentally conferred benefit. As for (d) and (e), not only is there no mandate for immediate arrest,

but there is no statutory requirement that a perpetrator be held without bond. In fact, § 46b-38b (e) authorizes the court to release a perpetrator subject to protective conditions it deems appropriate. This court draws upon its own experiences in which it has imposed protective orders subject to appropriate conditions and safeguards on numerous family violence defendants who have been released at arraignment within forty-eight hours of their arrests.

Similarly, in *Doe By Nelson* v. *Milwaukee County,* supra, 903 F.2d 499, the plaintiff advanced the argument that *DeShaney* sanctioned the proposition that the Wisconsin statute requiring a department of social services investigation of child abuse within twenty-four hours vested the plaintiff's mother with a property interest in having that investigation performed within twenty-four hours. The court held that "[o]ne *cannot* have a 'property interest' (or a life or liberty interest, for that matter) in mere procedures because [p]rocess is not an end in itself." (Citation omitted; emphasis in original.) Id., 503. As the court indicated, the Wisconsin statute constituted a set of procedures that guides Wisconsin counties in their effort to prevent child abuse. "Unarguably, these procedures assist the county in conferring the benefit of government protection upon Wisconsin's minor residents. But the procedures themselves are not 'benefits' within the meaning of Fourteenth Amendment jurisprudence." Id. To put it another way, the court described the term "property" as that which is "securely, and durably yours under state . . . law as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." (Internal quotation marks omitted.) Id., 504. The court stated further that while the intended beneficiaries of the Wisconsin statute are Wisconsin's children, "[y]et they must wait and suffer abuse *unless and until* someone else makes a

report to the [Department of Social Services]. The benefit, therefore, is entirely contingent upon the perceptiveness and diligence of third parties. Consequently, it is impossible to say that the right to an investigation of a report of child abuse 'securely, and durably' belongs to anyone at all.'' (Emphasis in original.) Id.

So too in the present case, the benefit of safety and bodily security is entirely contingent upon the receptiveness and diligence of the police. There is no allegation in this complaint that the time lapse between February 11 and February 15 was so excessive as to constitute a violation of the statute.

### PROCEDURAL LIBERTY INTEREST

Klein argues that under the United States Supreme Court decision in *Hewitt* v. *Helms,* 459 U.S. 460, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983), the explicit mandatory procedures spelled out in § 46b-38b conferred a protected liberty interest upon her. In *Hewitt,* the court found a protected liberty interest in the right of a prisoner whose liberty was curtailed further by a mandatory administrative regulation. The court announced a two-pronged test to determine whether a protected interest exists (1) whether the statute or regulation provides for explicit mandatory procedures, and (2) whether it contains substantive predicates triggering such mandatory procedures. Id., 471–72.

When the federal cases decided after *Hewitt* are analyzed it is apparent that virtually all of them involve a prison setting. *Kentucky Dept. of Corrections* v. *Thompson,* 490 U.S. 454, 461, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989). In *Oviatt* v. *Pearce,* 954 F.2d 1470 (9th Cir. 1992), the *Hewitt* rule was extended to prearraignment incarceration. *Oviatt* v. *Pearce,* supra, 1474, instructs that the statute must direct that a given action must be taken or avoided only upon the existence or nonexistence of specified substantive predicates.

" '[T]he liberty interest is created when the word "shall" is used to mandate certain procedures.' " Id., 1475. When this rule is treated as the standard for the present case, it is apparent that the mandatory word "shall" in § 46b-38b requires arrest "whenever a peace officer determines upon speedy information that a family violence crime has been committed within his jurisdiction." Unlike § 46b-38b, the Oregon statute in *Oviatt* mandated that the defendant be arraigned during the first thirty-six hours of his custody. Thus, there was a prescribed time frame for discharge of the affirmative duty of the police.

In *Dix* v. *County of Shasta*, 963 F.2d 1296 (9th Cir. 1992), a crime victim sought to rely on *Hewitt* to vindicate a statutory right to participate in the sentencing proceeding against the perpetrator. In applying *Hewitt*, the court ruled that the California Victims' Bill of Rights created nothing more than an expectation to participate in a process not to affect sentencing proceedings. Id., 1300.

In *Edwards* v. *Johnston County Health Dept.*, 885 F.2d 1215 (4th Cir. 1989), the plaintiffs claimed a procedural due process liberty and property interest in state regulations requiring inspection and safety certification of private migrant housing facilities. In rejecting the claim, the court took a restrictive view reasoning that the state neither placed the plaintiffs in their jobs nor in their substandard housing about which they complained, nor were the plaintiffs in the custody of or employed by the state or state actors. It, therefore, found no *Hewitt* type of liberty interest on behalf of the plaintiffs. Id., 1220.

In *Collins* v. *Harker Heights*, 503 U.S. 115, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992), the plaintiff sued the city alleging that the Texas Hazard Communica-

tion Act imposed a duty upon the city to warn its sanitation workers of noxious gases contained in its sewer pipes and to provide training and protective equipment to minimize the danger. Relying on *Hewitt* v. *Helms, supra,* 459 U.S. 460, the plaintiff argued a violation of the specific mandatory provisions securing the substantive predicate of protection and safety from noxious gases. The court held that the due process guaranteed by the constitution 'in connection with only deprivation of liberty . . . includes a continuing obligation to satisfy certain minimal *custodial* standards." (Emphasis added.) *Collins* v. *Harker Heights, supra,* 1070. As the United States Court of Appeals for the Fourth Circuit did in *Edwards* v. *Johnston County Health Department, supra,* 885 F.2d 1215, the United States Supreme Court perceived no liberty interest entitled to constitutional protection.

From an analysis of these cases, it is apparent that the rule of *Hewitt* v. *Helms, supra,* 459 U.S. 460, has been applied only where the actor complained of is the government and explicit statutory provisions mandate direct governmental action, the failure of which results in harm to the victim. The rule does not apply where failure to act by the government provides an opportunity for harm caused to the victim by a private individual. This is precisely what is alleged in the revised complaint in the case here. For these reasons, the defendants' motion to strike counts two and four of the revised complaint is granted.

## II

### STATE CONSTITUTIONAL CLAIMS

Counts three and five allege that the same facts contained in counts two and four of the revised complaint constitute an infringement of Klein's liberty interest under article first, § 8 of the constitution of Connecticut. The court notes at the outset that Klein has fur-

nished no analysis whatsoever of her state constitutional claims except to cite *State* v. *Marsala,* 216 Conn. 150, 579 A.2d 58 (1990), in which the Supreme Court construed article first, § 7 of the state constitution as affording broader protection against search and seizure than that provided by the fourth amendment to the federal constitution. Thus, the court declined to be bound by the United States Supreme Court's interpretation of the fourth amendment in *United States* v. *Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). Accordingly, the court refused to approve the "good faith" exception to the exclusionary rule against unlawful search and seizure.

With respect to the due process clause of the fourteenth amendment of the United States constitution, this court is bound by our Supreme Court's limitation of the contours of article first, § 8 of the constitution of Connecticut. *Lee* v. *Board of Education,* 181 Conn. 69, 71, 434 A.2d 333 (1980). Adherence to this view has been consistent. See, e.g., *Rado* v. *Board of Education,* 216 Conn. 541, 555, 583 A.2d 102 (1990). If the protection afforded by article first, § 8 of the constitution of Connecticut is to be expanded beyond the parameters of the fourteenth amendment to the federal constitution, it may be done only by one of the state's appellate courts, and not by this court. This court is duty bound to apply clear instructional precedent.

## III

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

The sufficiency of the issue presented in this count has not to date been decided by either of the appellate courts. Whether a cause of action for negligent inflictin of emotional distress lies in Connecticut is subject to a wide divergence of opinion both positive and negative. This court has had occasion previously to write on this very issue. In *Costa* v. *L. & M. Workroom, Inc.,*

Superior Court, judicial district of Stamford-Norwalk, Docket No. 108718S (December 2, 1991) the court granted the defendant's motion for summary judgment against a claim for bystander emotional distress. The court's analysis relied on *Strazza* v. *McKittrick*, 146 Conn. 714, 156 A.2d 149 (1959), in which the Supreme Court described two situations in which there may be recovery for bystander emotional distress. The first is where the distress produced injuries such as would be elements of damage had a bodily injury been suffered. The second is where the plaintiff suffered a shock that was caused by a fear of injury to herself. Each of those situations presumes the requirement that the plaintiff be within the zone of danger. Id., 717–18.

Applying these principles to the sixth count, there is no allegation that DeJesus, the minor plaintiff, suffered injuries from emotional distress such as would constitute a proper element of damages had she suffered a bodily injury. Likewise, the complaint is devoid of any allegation that the minor plaintiff suffered such emotional distress out of fear of injury to herself. The fact that this distress was caused by the intentional tort of assault on her mother does not alter the result. *Lawrence* v. *Sniffen,* Superior Court, judicial district of Stamford-Norwalk, Docket No. 109461S (February 21, 1991) (3 Conn. L. Rptr. 278); *Legert* v. *Tippitt,* 164 Cal. App. 3d 625, 210 Cal. Rptr 814 (1985). The defendants' motion to strike the sixth count of the plaintiffs' revised complaint is granted.