Charles **CLARK**, Sr., et al., Plaintiffs,

v.

**CITY OF KANSAS CITY, MISSOURI,**
Defendant.

No. 00–0097–CV–W–3.

United States District Court,
W.D. Missouri.

May 16, 2000.

Kirk R. Presley, Bartimus, Frickleton, Presley, PC, Kansas City, MO, for Charles Clark, Sr., Vanessa Clark.

Patricia A. Mullins, Sanders, Simpson, Fletcher & Smith, Kansas City, MO, for Charles Clark, Sr., Vanessa Clark, Larry McNeal, Keasha McNeal, Latasha

McNeal, Janal McNeal, Monica Hudson, Daeshanna Hudson, Orlando Hudson, Jr., William Hudson, Dorothy Hudson, Elbert Weems, Alicia Black, Ernest Black, Dorothy Alexander, Darryl Price, Cherion Price, Mia Sedora Allen, Aaron Harton.

Harold L. Holliday, Jr., The Holliday Law Firm, Kansas City, MO, for. Elbert Weems, Alicia Black, Ernest Black, Dorothy Alexander, Darryl Price, Cherion Price, Mia Sedora Allen, Aaron Harton.

Edward L. Pendleton, Pendleton Law Office, Kansas City, MO, for Larry McNeal, Keasha McNeal, Latasha McNeal, Janal McNeal.

David R. Smith, Sanders, Simpson, Fletcher & Smith, Kansas City, MO, for Monica Hudson, Deashanna Hudson, Orlando Hudson, Jr., William Hudson, Dorothy Hudson.

Lynn R. Johnson, Steven G. Brown, Shamberg, Johnson & Bergman, Overland Park, KS, for Monica Hudson.

Lynn R. Johnson, Shamberg, Johnson & Bergman, Overland Park, KS, for Daeshanna Hudson, Orlando Hudson, Jr., William Hudson, Dorothy Hudson.

*ORDER (1) DISMISSING COUNTS XIII THROUGH XXIV FOR FAILURE TO STATE A CLAIM AND RE-MANDING REMAINING CLAIMS TO STATE COURT*

SMITH, District Judge.

This lawsuit commenced in state court on February 17, 1999. At that time Plaintiffs' claims were predicated solely on state law, and diversity of citizenship was lacking. On January 6, 2000, Plaintiffs amended their petition to include various constitutional claims. Defendant then removed the suit to federal court. On February 2, 2000, the Court issued an Order expressing its concern that the constitutional claims might not be legally cognizable and invited Defendant to raise the issue.

Defendant filed its Motion to Dismiss on February 28, 2000, and Plaintiffs responded on April 13, 2000. Defendant has not filed a reply to Plaintiffs' response, and the time for doing so has passed. *See* Local Rule 7.1(1). The Motion to Dismiss (Doc. # 7) is granted; Counts XIII through XXIV are dismissed for failure to state a claim and the remaining counts are remanded to state court.

*I. BACKGROUND* [1]

Plaintiffs are the survivors of individuals killed during an October 4, 1988 flood in Kansas City, Missouri. The decedents died after being "swept from the roadways and/or bridges of Kansas City, Jackson County, Missouri into Brush Creek and surrounding areas and subsequently drowned." Amended Complaint, ¶ 22. Defendant had installed a mechanical warning system (the "ALERT System") that was "designed to provide early warning of flooding in Brush Creek and other creeks and rivers in the Kansas City area." *Id.* ¶ 23. The warnings were provided to emergency personnel "so that preventative action and warnings could be taken." *Id.* ¶ 24. On the date of the flood, "the ALERT System was in a defective condition in that its component parts were malfunctioning, without a working power source, and the main computer system was experiencing various technical problems that were unfixable without further training for the personnel manning the system." *Id.* ¶ 25. Defendant knew the Alert System was defective but did not warn the public of that fact, nor did Defendant otherwise warn the public about flooding in Brush Creek on October 4. *Id.* ¶¶ 26, 28.

The constitutional claims are asserted in Counts XIII through XXIV. Two different constitutional claims are asserted with respect to each decedent. The first claim is typified by Count XIII and is repeated in Counts XV, XVII, XIX, XXI and XXIII. The second claim is typified by Count XIV

1. Given the procedural posture of the case, all allegations in the Amended Complaint are deemed to be true and are construed in Plaintiffs' favor.

and is repeated in Counts XVI, XVIII, XX, XXII and XXIV. For ease of discussion, only Counts XIII and XIV will be analyzed in detail.

Count XIII asserts that Defendant "failed to maintain the Brush Creek flood Alert system equipment in its possession and had a custom and practice, and a de facto policy, of failing to maintain said equipment and failing to adequately train city personnel on the use of said equipment." Amended Complaint, ¶ 105. Defendant was aware that the ALERT System was not operational. *Id.* ¶¶ 106, 108. The policy of failing to maintain the ALERT System "was done unreasonably, intentionally, recklessly, knowingly, or with deliberate indifference to the rights of the inhabitants of Kansas City." *Id.* ¶ 110. As a result, the decedent suffered an "unreasonable seizure in violation of his Fourth, Fifth, and Fourteenth Amendment rights." *Id.* ¶ 109.

Count XIV asserts that a single individual (Julie Ann Llorente) "manned" the ALERT System but she had told Defendant that she was inadequately trained to do so. Amended Complaint, ¶¶ 114–15. Llorente's repeated requests for training were ignored. *Id.* ¶¶ 116–17. Defendant's failure to train Llorente or hire qualified individuals "was so likely to result in a deprivation of life, a constitutional right, to an individual, that the need to train was patently obvious and in violation of decedent's Fourth, Fifth, and Fourteenth Amendment rights. . . ." *Id.* ¶ 124.

## II.  DISCUSSION

### A.  Standard

■ A motion to dismiss for failure to state a claim should be granted when it appears that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Davis v. Hall,* 992 F.2d 151, 152 (8th Cir.1993) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In ruling on a motion to dismiss, the Court is required to view the facts alleged in the complaint in the light most favorable to the Plaintiff.

### B.  Due Process

■ The Court concludes that Plaintiffs have failed to state a claim that the decedents' substantive due process rights were violated. There are "two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights,* 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). The latter issue is important because respondeat superior liability does not apply to a municipality in this context, so a municipality can be liable for the unconstitutional actions of its agents/employees only "when it can be fairly said that the city itself is the wrongdoer." *Id.* at 122, 112 S.Ct. 1061. This can occur when the actions are taken pursuant to an official policy or custom. *Id.* at 122–24, 112 S.Ct. 1061.

Satisfaction of the second element does not automatically satisfy the first; the two inquiries are distinct. *Id.* at 120–22, 112 S.Ct. 1061. Accepting that the Amended Complaint satisfactorily pleads the existence of an official policy or practice, Plaintiffs' claims fail because their pleadings do not assert the existence of a constitutional violation.

Plaintiffs insinuate that the constitutional violation is clear in this case because their family members have died, and "life" is one of the liberties specifically protected by the Fourteenth Amendment. This analysis is in conflict with that employed by the Supreme Court. For instance, the same argument was made in *Collins,* where the plaintiff's husband died of asphyxia while working in a sewer. The Court did not characterize the plaintiff's claim simply as involving simply the denial of the decedent's right to live, but rather "that the Federal Constitution imposes a duty on the city to provide its employees

with minimal levels of safety and security in the workplace, or that the city's 'deliberate indifference' to Collins' safety was arbitrary government action that must 'shock the conscience' of federal judges." 503 U.S. at 126, 112 S.Ct. 1061. Here, then, Plaintiffs' claim must be understood as alleging that the Constitution imposes a duty on Defendant to provide effective warnings that waterways are flooded and adequately train its employees to respond to floods, or that Defendant's conduct "shocks the conscience" to a sufficient degree as to constitute a Due Process violation.

These theories fail as a matter of law. In rejecting a claim that a prison official's failure to remove a pillow left on a staircase that ultimately caused the plaintiff to fall and injure himself, the Supreme Court explained:

> Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society. We have previously rejected reasoning that would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.

> \* \* \* \* \* \*

> That injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectible legal interests. The enactment of tort claim statutes, for example, reflects the view that injuries caused by such negligence should generally be redressed. It is no reflection on either the breadth of the United States Constitution or the importance of traditional tort law to say that they do not address the same concerns.

*Daniels v. Williams*, 474 U.S. 327, 332, 333, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)

(quotations and footnotes omitted). Consequently, the Due Process Clause does not impose federal (i.e. Constitutional) duties as an analog to tort law. *Collins*, 503 U.S. at 128, 112 S.Ct. 1061. Certainly, it would be desirable for cities to warn their citizens of impending natural disasters and/or hazards on the public streets, sidewalks and bridges. It is also desirable for cities to provide their employees with adequate training. However, that which is desirable is not necessarily required. Neither the text nor the history of the Fourteenth Amendment suggests that local governments have an affirmative, constitutional obligation to protect its citizens from the forces of nature or warn about concomitant hazards. "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1717, 140 L.Ed.2d 1043 (1998).

The Court also concludes that the conduct in question is insufficiently "shocking" to rise to the level of a Due Process concern because the claim is analogous to a fairly typical state-law tort claim; namely, a claim of negligence. This is particularly true when the conduct in question is the product of a governmental decision concerning the allocation of resources because those decisions "involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country." *Collins*, 503 U.S. at 129, 112 S.Ct. 1061.

Plaintiffs rely heavily upon the Eighth Circuit's decision in *Ruge v. City of Bellevue*, where the court differentiated between a situation "where the state abuses its governmental power through an alleged policy of actively placing a person into a situation of known danger" and one "where the state simply commits a tort...." 892 F.2d 738, 741–42 (8th Cir. 1989). The former stated a Due Process

claim, while the latter did not. The Court concludes that *Ruge* is no longer valid in light of *Collins.* In deciding *Collins,* the Fifth Circuit observed that its decision stood in conflict with *Ruge.* 916 F.2d 284, 290–91 (5th Cir.1990). The conflict between the two cases was also noted by the Seventh Circuit. *Dawson v. Milwaukee Housing Auth.,* 930 F.2d 1283, 1285–86 (7th Cir.1991). Most importantly, the conflict provided part of the Supreme Court's motivation for granting certiorari in *Collins.* 503 U.S. at 119, 112 S.Ct. 1061. In affirming the Fifth Circuit's decision that the complaint failed to state a claim (albeit on grounds different than those expressed by the court of appeals), the Supreme Court obviously rejected the rationale *Ruge* employed to conclude a cause of action existed.

Plaintiffs' reliance on *S.S. v. McMullen,* 186 F.3d 1066 (8th Cir.1999) is unavailing for two reasons. First, the Eighth Circuit vacated its opinion in *McMullen* on September 30, 1999. Second, even if *McMullen* remained good law, it would not aid Plaintiffs in this case because the panel held a cause of action existed under the "state created danger" theory because state officials returned the plaintiff to the custody of her abusive father with full knowledge that the father had been abusing the minor child. 186 F.3d at 1073–74. In this case, Defendant did not create the flood, nor did it take affirmative steps to put the decedents in the flood's path. *McMullen* is inapposite.

The Eighth Circuit's decision in *Freeman v. Ferguson,* 911 F.2d 52 (8th Cir. 1990) is equally unavailing. There, the court acknowledged that the complaint failed to state a claim but held the district court should have allowed the plaintiff to amend the complaint to comply with a then-recent Supreme Court decision, *DeShaney v. Winnebago County DSS,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In *DeShaney,* the Court observed that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." 489 U.S. at 195, 109 S.Ct. 998. Subsequently, *Freeman* has been understood as holding that "[a] duty to protect has ... been recognized in the circuit courts when the state affirmatively places a particular individual in a position of danger that she would not otherwise have faced. For such a duty to arise, the actions of the state must create a unique risk of harm to the plaintiff that is greater than the risk faced by the general public." *Davis v. Fulton County, Ark.,* 90 F.3d 1346, 1351 (8th Cir.1996) (citations, including one to *Freeman,* omitted). *Freeman* does not apply in this case.

The events in question were undeniably tragic. That tragedy does not, however, transform what is really a claim of negligence into a Constitutional matter. The Court concludes that Plaintiffs have failed to sufficiently plead the existence of a Due Process violation.

### C. Fourth Amendment

■ Plaintiffs' Fourth Amendment claims are flawed because they do not allege (and in fact deny, *see* Suggestions in Opposition at 12) that Defendant intended to cause the decedents' death, so there has been no "seizure" as is required by the text of the Fourth Amendment. Plaintiffs insist their claim is viable because Defendant intentionally elected not to maintain the ALERT System, and this intentional act caused the deaths. This very argument has been rejected by the Supreme Court.

It is clear, in other words, that a Fourth Amendment seizure does not occur

whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

*Brower v. County of Inyo,* 489 U.S. 593, 596–97, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (emphasis in original). The Court later relied on this very passage to hold that a passenger on a fleeing motorcycle killed in a crash caused by the police's high-speed pursuit was not a seizure— even though the officer's pursuit and the speed could be characterized as "intentional." *Lewis,* 118 S.Ct. at 1715–16. The Court also notes that crediting Plaintiffs' position would create a constitutional claim whenever governmental action causes death or injury, which the Supreme Court has clearly stated is not a correct view of the law.[2]

### D.  Choice of Forum

 A district court has supplemental jurisdiction over claims that are sufficiently related to claims lying within the court's federal jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). However, a district court can decline to exercise its supplemental jurisdiction if, *inter alia,* it has dismissed all claims over which it has original jurisdiction. *Id.* § 1367(c)(3).

All federal claims have been dismissed, leaving only state-law claims. Diversity of citizenship is lacking, so the Court does not have original jurisdiction over the remaining claims. The Court declines to exercise supplemental jurisdiction over the state-law claims. In making this decision,

the Court notes that this case has spent most of its existence in the state court, and the state court is therefore more familiar with its history. The Court also notes that this case does not necessarily involve a straightforward application of tort law, as it may raise questions relating to the existence of a duty and exceptions to sovereign immunity. For these reasons, the Court concludes that it would be more appropriate for the case to return to state court.

### III.  CONCLUSION

Counts XXIII through XXIV are dismissed for failure to state a claim. The remaining counts are remanded to the Jackson County (Missouri) Circuit Court.

IT IS SO ORDERED.

---

**2.** Plaintiffs' contention that *Brower* and *Lewis* are inapplicable because they involve police encounters is rejected. Plaintiffs offer no legally sufficient reason why this difference should alter the outcome. To the contrary,

the Court is aware of no principle suggesting that the Fourth Amendment provides different protections depending upon whether the government actor is or is not a police officer.