**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Felipe Valencia CHAVEZ,
Defendant–Appellant.**

No. 90–10067.

United States Court of Appeals,
Ninth Circuit.

Submitted Sept. 17, 1992 *.

Decided Nov. 18, 1992.

R.App.P. 34(a); 9th Cir.R. 34–4.

Thomas M. Kummerow, Oakland, Cal., for defendant-appellant.

Marcia J. Allmand, Asst. U.S. Atty., San Jose, Cal., for plaintiff-appellee.

Before: ALARCON, BOOCHEVER, and HALL, Circuit Judges.

ALARCON, Circuit Judge:

Felipe Valencia Chavez appeals from the judgment entered upon his conviction for two counts of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Chavez asks for reversal of his conviction on two grounds: (1) the district court erred in denying his motion to admit a diagram into evidence for purposes of impeaching a Government witness, and (2) the sixteen-month delay in the preparation of trial transcripts for review by this court violated his right to due process in the processing of his appeal. We affirm because we conclude that Chavez has not demonstrated that he suffered any prejudice from the delay in the preparation of the trial transcripts, and that the trial court did not abuse its discretion in refusing to admit the diagram into evidence.

## I.

### PRETRIAL FACTS AND PROCEDURAL HISTORY

A. *Factual and Procedural Posture Prior to the Filing of the Notice of Appeal.*

Chavez, Adislado Parades Rosales, and Enrique Mendez Pineda, were indicted on June 1, 1989. Chavez was charged in count one with distributing heroin and possessing it with the intent to distribute it on May 11, 1989, and in count two with participating in a conspiracy to distribute heroin and to possess heroin with the intent to distribute it. In count five, Chavez was separately charged with distributing heroin and possessing it with the intent to distribute it on May 23, 1989. During pretrial proceedings, the district court granted Chavez's motion for a severance of counts one and two from count five.

On October 3, 1989, the date ultimately set for the trial of counts one and two, Mendez entered a plea of guilty pursuant to an agreement. The matter proceeded to trial, as to Chavez only, on that date on counts one and two. The court ordered the trial on count five to follow immediately upon the conclusion of the proceedings on counts one and two.

The Government presented its case through the testimony of Officer Pete Ramirez and Officer Paul R. Benedetti of the San Jose Police Department. Each officer was a member of a task force of the Drug Enforcement Agency. Chavez did not testify.

Officer Ramirez testified that he was introduced to Mendez on May 11, 1989, by a confidential informant. In a telephone conversation, Officer Ramirez represented to Mendez that he was interested in pur-

chasing 10 to 25 ounces of heroin. Mendez replied that he could supply heroin at a price of $2300 per ounce, but he could only supply three to five ounces at a time.

In a subsequent telephone conversation, Officer Ramirez told Mendez he would purchase a one-ounce sample for $2300 to test the quality of the heroin. Mendez agreed to sell one ounce. He stated he would have two to three ounces in his possession at the time of the sample sale. In a third conversation, Mendez suggested that the sale should take place at the Hyde Street Market at First and Bassett in San Jose. Officer Ramirez agreed to meet Mendez there that evening at 6:00 o'clock.

Officer Ramirez informed other members of the DEA task force about the arrangements he had made for the purchase of heroin. Officer Benedetti and three other officers went to the First and Bassett area to observe the transaction.

When Officer Ramirez arrived at the Hyde Street Market, he observed Mendez walking through the parking lot away from the market. Officer Ramirez was in an unmarked, undercover car. The confidential informant was a passenger in Officer Ramirez's vehicle. Officer Ramirez directed the confidential informant to alight from the vehicle to "scan the parking lot for police." Officer Ramirez honked his horn to attract Mendez's attention. Mendez turned around, waved, and entered Officer Ramirez's vehicle.

Officer Ramirez asked Mendez if everything was ready for the sale. Mendez replied that the transaction would have to take place inside the market. Officer Ramirez refused. He told Mendez there would be many persons inside the market. Mendez then stated he would "have to check on something." Mendez walked towards the front of the market. Officer Ramirez lost sight of him. Officer Ramirez testified that Mendez returned to his vehicle in a few minutes. Officer Ramirez asked Mendez if everything was ready. Mendez replied that it was. Mendez produced an ounce-size ball wrapped in yellow tissue paper from his pocket. Officer Ramirez opened the packet and inspected its contents. It contained black tar heroin. Officer Ramirez told Mendez he was not satisfied with the quality of the heroin. Mendez stated it was good but he would lower the price by $100. Officer Ramirez agreed to buy the heroin if Mendez assured him the quality of the next purchase would be higher. During these negotiations, Officer Ramirez observed Chavez park a Hyundai next to the passenger side of his vehicle. Officer Ramirez saw Chavez make a gesture with his hands. Mendez told Officer Ramirez "the deal was taking too long." Thereupon, Officer Ramirez gave Mendez $2200. Mendez handed the heroin to Officer Ramirez. Mendez alighted from Officer Ramirez's car and entered Chavez's vehicle. Chavez drove off.

Officer Benedetti testified that he had a clear view of the parking lot from his surveillance position. Officer Benedetti observed Officer Ramirez enter the lot and park his car. Officer Benedetti also saw Mendez wave at Officer Ramirez and then enter his vehicle. At about the same time, Officer Benedetti saw a "tall Mexican male wearing a white straw hat, bandanna type of a hat and a tank top kind of loitering right in the area in front of the store." Based on his training and experience as a narcotics officer, Officer Benedetti concluded that Chavez was acting in a countersurveillance capacity to determine whether Officer Ramirez was a law enforcement officer. Officer Ramirez identified Chavez as the man in the straw hat.

When Mendez left the undercover car, he contacted Chavez. Officer Benedetti observed Mendez and Chavez walk down the street out of his sight. In about ten seconds when they were again in his line of sight, Officer Benedetti saw Chavez hand Mendez a small yellow packet. Officer Benedetti reported his observation to the other officer in the area. He then observed Mendez go directly to Officer Ramirez's vehicle.

Chavez returned to the front of the store and looked in the direction of the parking lot. After Mendez entered Officer Ramirez's car, Chavez was joined by a woman and two children. The woman was carry-

ing groceries. Chavez placed the groceries in the trunk of a Hyundai. After the woman and the children entered the car, a person driving a brown Celica drove through the lot. He spoke to Chavez for a minute. Chavez then entered the Hyundai and started the engine. After about five minutes Chavez drove the Hyundai behind Ramirez's vehicle and stopped directly behind it. After 15 or 20 seconds Chavez pulled into a parking spot next to Ramirez's car and turned the engine off.

Officer Benedetti saw Mendez roll down the window and speak to Chavez. Chavez threw up his hands. After about two or three minutes, Mendez got out of Ramirez's vehicle and entered the Hyundai. After about thirty seconds, Chavez drove away.

On October 5, 1989, the jury returned a verdict of guilty for counts one and two of the indictment. Later that same day, Chavez entered a plea of guilty to count five of the indictment as part of a negotiated agreement. The Government agreed not to ask for consecutive sentences on counts one and two. Chavez agreed to waive his right to appeal the judgment entered upon count five.

On January 19, 1990, the court sentenced Chavez to imprisonment for 78 months for count one, count two, and count five and ordered the terms to be served concurrently. Chavez filed a timely notice of appeal from the judgment of conviction.

B. *Procedural Delay Following The Filing of the Notice of Appeal.*

Chavez appealed from the judgment entered in this action on January 19, 1990. The notice of appeal was timely filed in this matter on January 26, 1990.

On January 30, 1990, this court directed that the transcripts be ordered by February 9, 1990, and filed by March 2, 1990. Chavez and his former attorney failed to order the reporter's transcripts by the February 9, 1990, deadline. Chavez's appointed trial counsel filed a motion to be relieved as his attorney for this appeal on March 5, 1990. On March 30, 1990, the motion to withdraw as counsel was denied. This

court ordered the transcript to be filed by June 13, 1990. On April 18, Chavez filed a motion for reconsideration of the March 30, 1990, order. On June 27, 1990, this court granted the motion for reconsideration and relieved Jeane DeKelver as Chavez's attorney of record. New counsel was directed to designate the reporter's transcript by July 2, 1990. The transcript was due August 8, 1990. On July 2, 1990, this court appointed Thomas M. Kummerow, Esq. to represent Chavez. On July 12, 1990, Chavez filed a motion to extend the time for the designation of the transcript. Mr. Kummerow ordered the trial transcripts on August 10, 1990.

Meanwhile, the court reporter, Paul Frederickson, filed a request on June 26, 1990, to extend the time to file the trial transcripts until June 29, 1990. On July 5, 1990, Mr. Frederickson's request was granted.

On August 21, 1990, this court ordered that the transcripts be designated by September 21, 1990, and that the trial transcripts be filed by October 22, 1990. On August 23, 1990, Chavez filed a motion to extend the time to designate the reporter's transcript. This motion was granted on August 30, 1990. Chavez was ordered to designate the reporter's transcript by September 7, 1990.

On November 29, 1990, Mr. Frederickson filed a request to extend the time to file the reporter's transcript until December 22, 1990. This request was granted on December 19, 1990. Mr. Frederickson was ordered to file the transcript by December 21, 1990.

On January 28, 1991, Mr. Kummerow filed a letter on behalf of Chavez requesting the court's assistance in getting the transcript filed. On February 4, 1991, Mr. Frederickson filed a request for an extension of time until February 28, 1991, to file the reporter's transcript.

On February 12, 1991, Mr. Frederickson was ordered to file the transcripts within 14 days, or file a motion to extend the time to do so. On February 13, 1991, Mr. Fred-

erickson's motion to extend the time until February 28, 1991, was granted.

On March 27, 1991, Mr. Frederickson was ordered to file the transcripts within 14 days. On April 17, 1991, Mr. Frederickson filed a motion to extend the time for filing the transcripts until April 19, 1991. This motion was granted on April 23, 1991. On April 24, 1991, and May 24, 1991, this court received letters from Mr. Kummerow advising that the transcripts had not been received.

On June 7, 1991, Mr. Frederickson requested an extension of time to file the reporter's transcripts. On June 11, 1991, Mr. Frederickson was ordered to file the transcripts by June 25, 1991.

On July 17, 1991, Mr. Frederickson's June 7, 1991, motion for an extension of time was granted. Mr. Frederickson was ordered to file the transcripts on July 30, 1991. On September 16, 1991, Mr. Frederickson filed a motion to extend the time for filing until October 21, 1991. On September 24, 1991, the motion was granted.

Mr. Frederickson was ordered to file the transcripts by October 15, 1991. On November 13, 1991, Mr. Kummerow reported to this court that the transcripts had not been filed.

The reporter's transcripts were filed in the district court on December 24, 1991. The docket does not reflect whether any sanctions were ever imposed on Mr. Frederickson for his repeated disregard of this court's orders.

## II.

## ANALYSIS OF CHAVEZ'S CONTENTIONS

### A. *Delay in Processing This Appeal.*

██ Chavez contends that the sixteen-month delay in the filing of the reporter's transcripts on appeal violated his right to due process. We held in *United States v. Antoine,* 906 F.2d 1379 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 398, 112 L.Ed.2d 407 (1990), that extreme delay in processing an appeal may amount to a violation of due process. *Id.* at 1382. We

also held, however, that "a due process violation cannot be established absent a showing of prejudice to the appellant." *Id.* See *Coe v. Thurman,* 922 F.2d 528, 532 (9th Cir.1990) (prejudice cannot be presumed). *United States v. Tucker,* 964 F.2d 952, 953 (9th Cir.1992) (*petition for reh'g filed June 26, 1992, suggestion for reconsideration en banc pending* ) (prejudice is shown where there is a five-year delay on appeal thereby making it difficult for petitioner to refresh witnesses' memories).

We need not decide in this matter whether a delay of sixteen months is extreme. We recognize that the right to have an appeal processed in a timely manner cannot be "quantified into a specified number of days or months." *Barker v. Wingo,* 407 U.S. 514, 523, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972).

In determining whether delay in the processing of an appeal has resulted in prejudice to an appellant, we must consider whether the delay resulted in "(1) oppressive incarceration pending appeal, (2) anxiety and concern of the convicted party awaiting the outcome of the appeal, and (3) impairment of the convicted person's grounds for appeal or of the viability of his defense in case of retrial." *Antoine,* 906 F.2d at 1382.

Chavez has not demonstrated that his incarceration pending this appeal was oppressive. Because Chavez pleaded guilty to count five, and received a concurrent sentence of 78 months, he would not have been released earlier had we resolved the merits of his appeal concerning counts one and two prior to today. He currently is serving the remainder of his prison term on count five. Thus, he has not suffered oppressive incarceration because of Mr. Frederickson's delay in filing the reporter's transcripts.

Chavez also has failed to meet the second *Antoine* factor. While Chavez has understandably experienced anxiety and concern because of the delay in processing his appeal regarding counts one and two of the indictment, he has failed to demonstrate that his stress and frustration is any greater than "any other prisoner awaiting the

outcome of an appeal." *Antoine,* 906 F.2d at 1382–83. Unlike the appellant in *Antoine,* Chavez is serving time on another charge which is unaffected by our decision in this matter.

Chavez also argues that "the viability of his defense in case of a retrial will be severely impaired." Appellant's Opening Brief at 10. Chavez did not present a defense at trial. The testimony of the Government's witnesses at trial is recorded in the trial transcripts. Their memories can be refreshed by reviewing the reporter's transcripts. If their memories cannot be refreshed, their prior testimony can be introduced. In either event, any dimming of the memories of the Government's witnesses prejudices the prosecution, not the defense. Chavez asserts that his efforts to locate potentially exculpatory evidence has been severely curtailed. He has failed, however, to give any indication of what new evidence may now be available that was not within his knowledge prior to trial.

Chavez has failed to demonstrate that he has been prejudiced by the sixteen-month delay between his request and the filing of the reporter's transcripts. Accordingly, we must reject his due process claim and resolve the merits of this appeal.

### III.

■ Chavez contends that the district court erred by excluding from evidence a diagram drawn by Officer Ramirez during a meeting with defense counsel prior to trial. Chavez argues that the diagram was admissible to impeach Officer Benedetti's testimony that he saw Chavez hand Mendez the small yellow packet containing heroin.

■ We review evidentiary rulings of a trial court for abuse of discretion. *United States v. Catabran,* 836 F.2d 453, 456 (9th Cir.1988). We will reverse evidentiary rulings for abuse of discretion only if such nonconstitutional error more likely than not affected the verdict. *United States v. Emmert,* 829 F.2d 805, 808 (9th Cir.1987).

Chavez asserts that the diagram was admissible pursuant to Rule 613(b) of the Federal Rules of Evidence. He argues that the diagram demonstrates that the point in the diagram drawn by Officer Ramirez as the place where the heroin was handed to Mendez by Chavez differs from Officer Benedetti's testimony regarding their position.

Rule 613(b) provides in pertinent part:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

The record shows that Ramirez drew the diagram based on the description given by Officer Benedetti and other officers and the photographs taken by Officer Benedetti.

The diagram contains the words "Exchange (per Benedetti)." Officer Ramirez testified he did not place these words on the diagram. Officer Benedetti testified that he had never seen the diagram before it was shown to him during cross-examination. No evidence was presented to contradict their denial of authorship of these words.

Because Chavez failed to lay a foundation showing that Officer Benedetti wrote on the diagram, Chavez failed to demonstrate that the diagram contained a prior inconsistent statement of the officer. Accordingly, the diagram did not contain admissible evidence that tended to prove that Officer Benedetti had made a prior inconsistent statement. At most, the diagram demonstrated that Officer Ramirez had drawn the location where Chavez handed the package to Mendez. The record shows, however, that Officer Ramirez did not perceive the delivery of the heroin to Mendez. Therefore, the record merely establishes that Officer Ramirez's drawing regarding this event was based on his memory of the out-of-court declarations of others. Under these circumstances, the district court did

**1356**

not abuse its discretion in excluding the diagram.

AFFIRMED.