**Anthony M. DeMARIA, et al., Plaintiffs,**

v.

**WASHINGTON COUNTY, et al., Defendants.**

**No. CIV. 93–0249–S–BLW.**

United States District Court, D. Idaho.

March 22, 1996.

W. Anthony Park, William H. Thomas, Park Redford Thomas & Burkett, Boise, ID, John E.F. Dinapoli, Dinapoli Uzzi & Sibley, San Jose, CA, for Anthony M Demaria, husband and guardian ad litem for Plaintiffs.

James J. Davis, Anna K. Fiedler, Boise, ID, for Defendants.

## MEMORANDUM DECISION

WINMILL, District Judge.

## I

### INTRODUCTION

The Court has before it a Motion for Summary Judgment and a Motion to Strike filed by Defendants. The Court heard oral argument on March 22, 1996, and the Motions are now at issue. The Court will resolve the Motions after briefly reviewing the facts.

## II

### FACTS

In 1990, Anthony DeMaria moved to Weiser, Idaho with his sons Tony and John. Shortly after the DeMarias moved into their home, their neighbor Tom Sorensen began to harass and threaten them. Anthony DeMaria recounts that in 1991, he "frequently called the Sheriff's Department to report Mr. Sorensen's threats, which included warnings that he wanted to hurt my son, Tony Jr., that he would 'kick my ass' and kill my family. . . ." *See,* Affidavit of DeMaria at ¶ 6, p. 3. In addition to the threats of physical harm, Tom Sorensen also used ethnic slurs to disparage Anthony DeMaria's Italian heritage.

When Anthony DeMaria first complained to the Washington County Sheriff's Department about Sorensen's harassment, he was visited by Deputy Sheriff Jim Nelson. DeMaria alleges that he heard Deputy Nelson ask Tom Sorensen "is that asshole [referring to DeMaria] next door causing you trouble?" *Id.* at ¶ 6, p. 3. DeMaria alleges that Deputy Nelson treated him with "hostility," and ignored his complaints. *Id.* At the same time, Deputy Nelson would shake hands and laugh with Tom Sorensen, and appeared to be a good friend of the Sorensens.

On other occasions, DeMaria's complaints to the Sheriff's Department brought out Sheriff Mike Wadley. DeMaria asserts that Sheriff Wadley's visits were just like those of Deputy Nelson: Sheriff Wadley was scornful with DeMaria but warm and friendly with the Sorensens. DeMaria recites a conversation where Sheriff Wadley told him "I don't like you and I don't want you in my community." *Id.* at ¶ 16, p. 6.

The affidavits submitted by the DeMarias are also filled with hearsay concerning racial slurs made by Sheriff Wadley and Deputy Nelson against the DeMarias. For example, the Affidavit of Randy Poston, a friend of the DeMarias, states that he heard Jerry Sullivan, a police dispatcher, say that he (Sullivan) had heard Sheriff Wadley and Deputy Nelson (1) refer to Anthony DeMaria as a "wop," and (2) state that they wanted to "get Tony out of town because he was a Sicilian and connected with the Mafia." *See,* Affidavit of Poston, ¶ 7, p. 4. There is no affidavit from Jerry Sullivan; the record contains only affidavits from those who overheard Jerry Sullivan say these things. The deposition of Jerry Sullivan was taken, and the DeMarias have submitted excerpts from that deposition. But the DeMarias have not cited any portion of the Sullivan deposition to support their claims that Defendants discriminated against them on the basis of their Italian heritage. The Defendants have filed a Motion to Strike the hearsay allegations from the affidavits, and the Court will address that Motion later in this decision.

On March 26, 1993, the DeMarias received a death threat by phone. The caller threatened to kill the entire DeMaria family. The DeMarias reported this to the Sheriff, but no action was taken.

The next day, March 27, 1993, Tony DeMaria, Jr. and three others were driving toward the DeMaria home. Tom Sorenson was driving in the opposite direction, and when he passed the DeMaria vehicle he shook his fist at Tony DeMaria who responded with "the finger."

Tom Sorensen turned his vehicle around, and followed Tony DeMaria to the DeMaria home. There, Tom, and his son Keven, attacked Tony DeMaria. When Tony's brother, John, and his father came to his aid, Keven Sorensen struck both Anthony and John with a club. Tom Sorenson then ran home and returned with a shotgun. The police arrived on the scene while Tom Sorenson was threatening the DeMarias with the gun.

The police talked to witnesses and confirmed that the Sorensens had assaulted the DeMarias, but no action was taken against the Sorensens. Anthony DeMaria claims that as a result of the beating he suffers from permanent low back pain, incontinence, and sexual impotency.

The DeMarias claim further that the Sorensens' harassment continued after the fight and was ignored by Sheriff Wadley and Deputy Nelson. This continuing harassment included incidents where the Sorensens allegedly set fires near the DeMaria home.

## III

## LITIGATION HISTORY

The DeMarias filed this suit against six named defendants: (1) Washington County; (2) three individual Washington County Commissioners; (3) Sheriff Wadley; and (4) Deputy Nelson. The original complaint contained three causes of action: (1) a claim under 42 U.S.C. § 1985 that Sheriff Wadley and Deputy Nelson, knowing of the Sorensens' threats against the DeMarias, conspired to deprive the DeMarias of law enforcement protection; (2) a claim under 42 U.SC. § 1983 that Sheriff Wadley and Deputy Nelson improperly failed to arrest the Sorensens on March 27, 1993; and (3) a claim under 42 U.S.C. § 1985 that Washington County, through the Commissioners, failed to properly train Sheriff Wadley and Deputy Nelson, and that Sheriff Wadley failed to properly train Deputy Nelson. Although the Complaint contained no claim under 42 U.S.C. § 1986 in the sections specifically dealing with the three causes of action, a claim under § 1986 was made in the Complaint's general allegations section. The parties appear to agree that the DeMarias have made a § 1986 claim.

The defendants filed a Motion to Dismiss. The Motion was referred to Chief Magistrate Judge Mikel H. Williams who issued a Report and Recommendation recommending that the § 1983 claim be dismissed, and that the DeMarias be allowed to amend their § 1985 and § 1986 claims. Chief Magistrate Judge Williams made a thorough analysis of the DeMaria's § 1983 claim that the Defendants violated the Due Process Clause by failing to protect the DeMarias from the Sorensens' harassment. Chief Magistrate Judge Williams cited the leading Supreme Court case, *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), and its progeny from the Ninth Circuit, *Wood v. Ostrander*, 879 F.2d 583 (9th Cir.1989), and *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir.1992). These cases define the narrow circumstances where the Due Process Clause requires the state to protect its citizens from danger from private parties. The cases hold that the state is not liable under the Due Process Clause for protecting its citizens from dangerous private parties unless the state has affirmatively created the dangerous situation, or has limited—through incarceration or other means—the citizen's ability to act in his own defense.

Chief Magistrate Williams concluded that the "Defendants did not create the situation in which the [DeMarias] were subject to the actions of third party Sorensens, nor did it limit the [DeMarias] freedom to act on their own behalf." *See,* Report and Recommendation at p. 7. He therefore recommended a finding that the DeMarias had no Due Process Clause claim. The DeMarias briefing and argument did not indicate that their § 1983 claim was based on any constitutional violation other than a Due Process Clause violation. Therefore, Chief Magistrate Judge Williams recommended that the § 1983 claim be dismissed.

After reviewing the Report and Recommendation, Chief Judge Lodge agreed. He independently reviewed the Due Process case law cited above, and came to the same conclusion that the Defendants had not created the harm and had no special relationship with the DeMarias that would trigger Due Process protections. But during oral argument before Judge Lodge, the DeMarias' counsel apparently made an oral motion to be allowed an opportunity to amend his complaint. Chief Judge Lodge relented, and granted the request. In his Order, he actually granted the Defendants' Motion to Dismiss, but also granted the DeMarias' oral motion to amend complaint. In making that ruling, Chief Judge Lodge made it clear that this was the last opportunity for the DeMarias to get it right:

"The court takes no position on the ability of these plaintiffs to state cognizable civil rights deprivation actions. The court is not familiar with facts other than those facts alleged in plaintiffs' complaint and supporting declarations which the court has already held *are insufficient to state a cognizable claim.* The court invites the plaintiffs to make a thorough study of this area of the law and the cases cited by the court prior to the filing of any amended complaint by plaintiffs. And, the court cautions plaintiffs that a mere statement of

the causes of action presently pled will result in dismissal with prejudice without leave to refile."

Order at p. 12 (emphasis added).

The DeMarias did timely file an Amended Complaint. With regard to the § 1983 claim, the DeMarias—in an attempt to circumvent the rulings of Chief Magistrate Judge Williams and Chief Judge Lodge—added allegations that the failure of Sheriff Wadley and Deputy Nelson to arrest the Sorensens after the March 27, 1993 fight emboldened the Sorensens to continue harassing the DeMarias thereafter, and thus "affirmatively placed the Plaintiffs in a position of danger."

The Defendants have now brought a Motion for Summary Judgment seeking to dismiss the entire Amended Complaint. The Court will address the Motion after briefly reviewing the legal standards governing the Motion.

## IV

## LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT

The party moving for summary judgment has the burden of proving the absence of any genuine issue of material fact that would allow a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence must be viewed in the light most favorable to the non-moving party, *Id.* at 255, 106 S.Ct. 2505, and the Court must not make credibility determinations. *Id.* The trial judge must determine whether the evidence presented is such that a jury applying the proper evidentiary standard could reasonably find for either the plaintiff or the defendant. *Id.*

However, once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256–57, 106 S.Ct. 2505. In meeting this burden, the non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## V

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

■ The Defendants seek summary judgment on all claims made by the DeMarias. The Court will turn first to the § 1983 claim since it is well-established that there can be no § 1985 or § 1986 claim in the absence of a § 1983 claim. *Caldeira v. County of Kauai*, 866 F.2d 1175, 1177 (9th Cir.1989), *cert. denied*, 493 U.S. 817, 110 S.Ct. 69, 107 L.Ed.2d 36 (1989).

In examining a § 1983 claim, the Court must determine whether the Plaintiff has been deprived of a constitutional right. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). To resolve this issue, the Court "must isolate the precise constitutional violation with which the defendant is charged." *Id.* at 140, 99 S.Ct. 2689.

The DeMarias have been less than precise about identifying the constitutional violation upon which they base their § 1983 claim. From their Amended Complaint, briefing, and oral argument, it appears that they are claiming that Sheriff Wadley and Deputy Nelson violated the Due Process Clause. More specifically, the DeMarias assert that the officers failed to arrest the Sorensens after the March 27, 1993 fight, thereby affirmatively placing the DeMarias in a dangerous position, exposed to the continued harassment of the Sorensens.

In an effort to distance themselves from the weakness of their prior claims, the DeMarias assert in their briefing that "Defendants affirmative conduct increased the danger the Sorensen's posed to them." *See*, Brief of DeMaria at p. 9. This, and other changes to the original complaint, were the DeMarias response to Chief Judge Lodge's strict admonition that the amendments provide weight to a weak case that was on the verge of being dismissed.

■ After reviewing the Amended Complaint, the Court finds that the minor changes made to that pleading lack the substance required by Chief Judge Lodge. This case has not changed in any real way since it was analyzed by Chief Judge Lodge and

Chief Magistrate Williams. And this Court's independent review of the Ninth Circuit case law leads the Court to agree with those Judges that the DeMarias have no Due Process Clause claim.

The definitive case on the Due Process issue is the Supreme Court case of *DeShaney v. Winnebago County Department of Social Services, supra.* There, a small boy was abused by his father numerous times during a two-year period. One final beating caused such extensive brain damage to the boy that he was permanently institutionalized. *Id.* at 193, 109 S.Ct. 998. The Winnebago County Department of Social Services (DSS) knew of the beatings that led up to that final tragic incident. More specifically, DSS knew—prior to the final beating—that the boy had been hospitalized on at least three separate occasions with injuries consistent with abuse; that a DSS caseworker had observed many suspicious injuries during six months of home visits; and that just months before the final beating, the caseworker had been refused entrance into the boy's home. *Id.* at 192–93, 109 S.Ct. 998. Despite this knowledge, DSS did nothing.

After the final beating, the boy's mother sued the DSS under § 1983, claiming the DSS violated the Due Process Clause by "failing to intervene to protect [the boy] against a risk of violence at his father's hands of which they knew or should have known." *Id.* at 193, 109 S.Ct. 998. The District Court granted summary judgment to the DSS, and the Seventh Circuit and Supreme Court affirmed.

The Supreme Court dealt with the Due Process issue this way:

> "Nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security..... As a general matter, then, we conclude that a State's failure to protect an individual against private violence

simply does not constitute a violation of the Due Process Clause."

*Id.* at 195–97, 109 S.Ct. 998.

The Plaintiffs in *DeShaney* argued, however, that this was a special case because "the State knew that [the boy] faced a special danger of abuse at his father's hands, and specifically proclaimed, by word and by deed, its intention to protect him against that danger." *Id.* at 197, 109 S.Ct. 998. The Supreme Court rejected that argument. The Court held that no duty of protection arises under the Constitution unless "the State takes a person into its custody and holds him there against his will." *Id.* at 199–200, 109 S.Ct. 998. Elaborating on that holding, the Court stated that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200, 109 S.Ct. 998.

The Ninth Circuit took this holding in *DeShaney* one step further in *Wood v. Ostrander,* 879 F.2d 583 (9th Cir.1989) *cert. denied,* 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990). There, a police officer had pulled over a drunk driver whose passenger was Linda Wood. The officer arrested the driver, impounded the car, and stranded Wood at 2:30 a.m. in a high-crime area. Predictably, Wood was raped. The Ninth Circuit reversed a summary judgment for the police officer, finding serious questions whether, in *DeShaney's* terms, the officer had limited Wood's "freedom to act on [her] own behalf." *DeShaney,* 489 U.S. at 200, 109 S.Ct. 998.

The Circuit reached the same result in *L.W. v. Grubbs,* 974 F.2d 119 (9th Cir.1992), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993). There, a prison nurse was raped by a violent sex offender assigned to work with her by the state. The state knew that the offender was likely to rape again, but did not tell the nurse of his proclivities. The Circuit stated that the "danger creation" exception to *DeShaney* "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." *Id.* at 121, 109 S.Ct. 998. The Circuit found

that the state "affirmatively created the dangerous situation which resulted in [plaintiff's] assault," by placing a known rapist in a job where he would accompany a female nurse on rounds with no supervision. *Id.*

The Ninth Circuit recently summarized this case law by stating, "[i]n this Circuit, that duty [to assume responsibility for the public's safety] obtains not only when the victim is in custody, but also when the state has created the danger to which the victim is exposed." *U.S. v. Koon,* 34 F.3d 1416, 1447 (9th Cir.1994), *cert. granted in part,* 515 U.S. 1190, 116 S.Ct. 39, 132 L.Ed.2d 920 (1995). This occurs, the Circuit held, when the victim is "placed in a dependent and helpless position...." *Id.* And from *Grubbs* and *Wood,* it is clear that the state must "affirmatively create" the dangerous situation that places the victim in the dependent and helpless position.

Assuming that the DeMarias' allegations are true, they do not rise to the level required by the Due Process Clause. Nothing in the record indicates that the Defendants affirmatively created any dangerous situation. The danger was affirmatively created by the Sorensens. The DeMarias were never dependent and helpless. Assuming that Sheriff Wadley and Deputy Nelson ignored the DeMarias pleas for help, their passivity is not the "affirmative creation of a dangerous situation" required by the case law.

The DeMarias claim that Sheriff Wadley and Deputy Nelson affirmatively created a danger by letting the Sorensens get away with outrageous physical and verbal abuse, thereby essentially encouraging that abuse. But this argument flies in the face of *DeShaney.* The county defendant in *DeShaney* let the abusive father get away with multiple beatings of his child. Certainly the abusive father could be said to have been emboldened by the county's "acquiescence-by-silence." But the Supreme Court dismissed the suit anyway, holding that the Due Process Clause was not violated when the "state functionaries ... stood by and did nothing when suspicious circumstances dictated a more active role for them." *Id.* at 203, 109 S.Ct. 998.

The DeMarias cite two cases from other circuits, both of which are distinguishable.

In *Freeman v. Ferguson,* 911 F.2d 52 (8th Cir.1990), the Plaintiffs asserted that the Chief of Police affirmatively prevented his officers from protecting the victim from an abusive ex-husband who was a close friend of the Chief. The Court did not directly hold that such allegations, if proven, would constitute a Due Process violation. Instead, the Court stated that since "we cannot determine from the current pleadings whether appellant's claims fall within [the *DeShaney* Due Process Clause protections] ... we find that appellant must be given the opportunity to amend her complaint before a conclusive ruling on this issue can be made in this case." *Id.* at 55.

The *Freeman* decision did state that "*DeShaney* does establish that the overall danger must at least be greater than it would be absent state action...." *Id.* Under that test, an officer like Sheriff Wadley or Deputy Nelson who fails to enforce the law is just like no officer at all, and the Due Process Clause is not implicated.

The second case cited by the DeMarias is *Dwares v. City of New York,* 985 F.2d 94 (2nd Cir.1993). There, the Plaintiff was beat up by "skinheads" during a flag-burning rally while the police stood by and watched. The Complaint alleged that "the officers conspired with the 'skinheads' to permit the latter to beat up the flag burners with relative impunity, assuring the 'skinheads' that unless they got totally out of control they would not be impeded or arrested." *Id.* at 99. The Second Circuit found that the complaint asserted that the officers "indeed had made the demonstrators more vulnerable to assaults" by their collaboration with the "skinheads," and thus the action was not precluded by *DeShaney. Id.*

The facts in the present case are much different. Here the abuse started well-before any "official sanction" from the police. It may be that the Sorensens *continued* the abuse because they met no resistance from Sheriff Wadley, but *DeShaney* has made it clear that the Due Process Clause is not violated when "the state functionaries ... stood by and did nothing...." *DeShaney,* 489 U.S. at 203, 109 S.Ct. 998. In every case where an officer stands by and does nothing,

a claim could be raised that the officer's inaction emboldened the criminal. But *De-Shaney* has clearly foreclosed these claims.

In conclusion, the Court finds that the DeMarias' claim that the Defendants violated the Due Process Clause is without merit. This should result in the dismissal of the DeMarias' § 1983 claim because the DeMarias have never argued that the claim was based on anything other than a Due Process violation.

It may be, however, that the Amended Complaint could be read to also assert that the § 1983 claim is based on a violation the Equal Protection Clause. Here, the DeMarias' argument would be that because of their Italian heritage, the Defendants did not afford them the same police protection given to other citizens.

■ The Court is concerned here, however, because in the numerous rounds of briefing and argument before Judges Lodge and Williams, and now before this Court, the DeMarias have never asserted that their § 1983 claim is based on an Equal Protection violation. In the oral argument before this Court, defense counsel brought up this very point in his opening argument, and the DeMarias' counsel failed to make any specific argument that the § 1983 claim was based on Equal Protection. The Court therefore has no briefing or oral argument from the DeMarias' counsel defining and supporting an Equal Protection claim. It certainly appears to the Court that the DeMarias have waived any Equal Protection argument they may have had under § 1983. But in the interests of reaching the merits of the issue, the Court will go on to rule that even if the DeMarias have not waived their Equal Protection claim, the claim must nevertheless be dismissed by summary judgment.

In *DeShaney*, the Supreme Court noted that "the State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." *DeShaney*, 489 U.S. at 197 at n. 3, 109 S.Ct. 998. The Ninth Circuit has held that a § 1983 claim can be based on an Equal Protection claim that a citizen was denied effective police protection because he was an Italian. *Benigni v. City of Hemet*, 879 F.2d 473 (9th Cir.1988). In *Benigni*, the

Circuit held that "[a]n Equal Protection claim based on selective law enforcement activities is judged according to ordinary standards and the plaintiff must show both a discriminatory effect and a discriminatory motivation." *Id.* at 477.

■ What evidence is there that the Defendants in this case had a discriminatory motivation? The DeMarias' affidavits are filled with hearsay statements on this issue. It is well-established that an affidavit filed in a summary judgment proceeding must "set forth facts as would be admissible in evidence ...." Fed.R.Civ.P. 56(e). Hearsay must be stricken. *Courtney v. Canyon Television*, 899 F.2d 845 (9th Cir.1990).

■ In response to the hearsay contained in the DeMarias' affidavits, the Defendants have filed a Motion to Strike. The Motion is well-taken. For example, Anthony DeMaria's affidavit contains statements that he heard Mark and Jerry Sullivan say that they (the Sullivans) had heard that the Sheriff's Department thought DeMaria was in the Mafia and that they disliked Italians. *See,* Affidavit of DeMaria at ¶s 8, 14. The same allegations are made in the Affidavit of Randy Poston. *See,* Affidavit of Poston at ¶ 7, p. 4. There is no affidavit of Jerry or Mark Sullivan. In fact, the depositions of the Sullivans were taken, but the DeMarias have not cited the Court to any provision of those depositions to support their claims of discrimination.

■ These statements about what the Sullivans said are clearly hearsay for which no exception exists in the Federal Rules of Evidence. The DeMarias claimed at oral argument that the statements of Jerry Sullivan were admissions of a party opponent and thus did not constitute hearsay under Fed. Rule of Evidence 801(d)(2). But this argument depends completely on a finding that Jerry Sullivan was an employee of Washington County at the time he made the statements that the Sheriff's Department was biased against the DeMarias because of their Italian heritage. Counsel agreed that Jerry Sullivan did not become an employee of Washington County until November, 1992. The comments contained in the Affidavit of

Randy Poston all appear to have occurred prior to or during concerts occurring in September and October 1992. But even that is unclear, because the Affidavits of both Poston and Anthony DeMaria do not provide the dates when the alleged conversations involving racial slurs occurred. It is well-established that affidavits filed in summary judgment proceedings must provide the foundational facts necessary to make the testimony contained in the affidavits admissible. Here, the DeMarias have failed to provide the foundation required by Rule 801(d)(2).

The DeMarias also appear to rely on Rule 801(d)(1)(A), claiming that Sullivan's deposition testimony is inconsistent with the statements of Poston and DeMaria and thus is admissible as an inconsistent statement. The foundational requirements for admitting inconsistent statements under Rule 801(d)(1)(A) are set forth in Rule 613(b). *U.S. v. Chavez,* 979 F.2d 1350 (9th Cir.1992); 28 Wright & Gold, *Federal Practice and Procedure,* § 6203 at p. 511 (1993). Rule 613(b) requires that the declarant be given an opportunity to explain the inconsistency. The Court has the deposition excerpt of the Sullivan deposition, and it is clear that Sullivan was never given any opportunity to explain an inconsistency. Because Rule 613(b) was not complied with, Rule 801(d)(1)(A) is inapplicable.

In addition, Rule 801(d)(1)(A) is only applicable when the declarant "testifies at trial subject to cross-examination ...." *U.S. v. Tafollo-Cardenas,* 897 F.2d 976 (9th Cir. 1990). Here, Sullivan has never testified at trial and thus the Rule is inapplicable for that reason as well.

The Court recognizes that the Ninth Circuit has recently held that when a District Court refuses to admit evidence under Rule 801(d)(1)(A), the Court must also consider whether the evidence is admissible under Rule 803(24), the catch-all provision. *U.S. v. Valdez-Soto,* 31 F.3d 1467 (9th Cir.1994). Here, the Court finds that the evidence does not have the indicia of trustworthiness required by Rule 803(24).

The Defendants' Motion to Strike must therefore be granted, and the hearsay stricken. When the hearsay is removed from the affidavits, there is no evidence in the record indicating that the Defendants had a discriminatory motivation. Thus, even if the DeMarias could be allowed to raise at this late date an argument that their § 1983 claim was based on an Equal Protection violation, there is no competent evidence in the record to support that claim.

For all of these reasons, the Defendants' Motion for Summary Judgment must be granted dismissing the DeMarias' § 1983 claim. Without a § 1983 claim, the DeMarias' § 1985 and § 1986 claims must be dismissed as well. The Court will enter a separate Judgment to that effect.