**SPX CORP., Plaintiff,**

v.

**John DOE, Defendant.**

No. 1:02CV919.

United States District Court, N.D. Ohio, Eastern Division.

Feb. 20, 2003.

James R. Wooley, Baker & Hostetler, Terry M. Brennan, Baker & Hostetler, Cleveland, OH, for SPX Corporation, dba Stock Equipment Company, Plaintiff.

David B. Webster, Webster & Webster, Laura E. O'Neill, Webster & Webster, Cleveland, OH, for John Doe Defendant.

## MEMORANDUM OF OPINION

MANOS, District Judge.

On July 31, 2002, John Doe, defendant, filed a Motion To Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 18). The parties have fully briefed these issues. For the following reasons, the motion is GRANTED. Accordingly, this action is hereby dismissed with prejudice, each party to bear its own costs.

## I. FACTS

SPX Corp., plaintiff, is a global provider of various technical and industrial products and services. The Defendant is an individual who, though represented by counsel, has not revealed his true identity. (Complaint at ¶¶ 2 and 3.)

This action arises from statements posted by the Defendant on an Internet message board maintained by non-party Yahoo! Inc. ("Yahoo!"), an Internet service provider. Generally, an Internet message board is an electronic forum through which anyone with Internet access can post messages about a given topic. Then, anyone with Internet access can read them, and even respond if desired. Yahoo!, *inter alia*, maintains message boards through which people discuss publicly traded companies. (*See* Complaint at ¶¶ 6–7.) In fact, according to the parties' briefs submitted with respect to a previous motion, Yahoo! maintains a separate message board devoted to each and every publicly traded company. One such message board pertains to the Plaintiff. Although Yahoo! provides the forum, it does not control the content of the messages. In addition, the Plaintiff has no affiliation with the message board. (*Id.*)

The statements at issue are attached as Exhibit 1 to the Plaintiff's Complaint. They were posted on the SPX message board in two separate postings, both occurring on February 22, 2002. As is common in sending messages over the Internet, the Defendant did not use his real name. Rather, he used the screen name "neutronb".[1] (Complaint at ¶¶ 3 and 7.) From

1. For convenience, the Court refers to the Defendant using male pronouns. Neutronb might be female.

the postings, it is impossible to determine the true identity of neutronb.

The first posting was made at 12:52 p.m. and states in its entirety:

**TIMBER!!!!! Accounting Fraud!!!!!!**

by: neutronb

Long–Term Sentiment: **Strong Sell**

Get ready for and [sic] SEC and FBI Probe

(Emphasis in original.) The second posting was made only about a minute later and states in its entirety:

**SPX = Massive SEC and FBI Investigation**

by: neutronb

Long–Term Sentiment: **Strong Sell**

Overleveraged, lots of insider selling, shit businesses, and cooking the books. Price Target $30

(Emphasis in original.)

On May 1, 2002, the Plaintiff filed this action against "John Doe" in the Court of Common Pleas of Cuyahoga County, Ohio, but the Complaint could not be served because the Plaintiff did not know the identity of neutronb. The Complaint has one count and asserts that the Defendant's postings constitute defamation under Ohio law.

On May 6, 2002, in an attempt to identify the Defendant, the Plaintiff initiated a subpoena against Yahoo! essentially seeking all documents that refer or relate to the user going by the screen name neutronb. On May 7, 2002, Yahoo! refused to turn over the information, but indicated that it would do so if neutronb did not object to the subpoena. Yahoo! forwarded the Complaint and the subpoena to the Defendant, who hired counsel.

On May 15, 2002, the Defendant removed the action to this Court on diversity grounds, and Counsel agreed to accept service on the Defendant's behalf. On May 22, 2002, the Defendant filed a Motion To Quash the subpoena, which was briefed by the parties. As a result of his objection to the subpoena, Yahoo! has not turned over the information relating to his Internet account.

In challenging the subpoena, the Defendant maintained that the statements at issue do not meet the legal definition of defamation. He also claimed that the First Amendment guaranteed his right to speak anonymously and he desired to avoid discovery that might reveal his identity. The Plaintiff, on the other hand, argued that it was entitled to discovery given its right to pursue this action. On July 1, 2002, the Court issued a Memorandum of Opinion and Order reserving ruling on the Motion To Quash. The Court recognized the sensitive issues regarding protections of anonymous speech, as well as those regarding forcing an Internet service provider (Yahoo!) to reveal personal information of a subscriber. The Court concluded that the various competing interests were best balanced by entertaining a motion to dismiss prior to permitting discovery which would reveal the Defendant's identity. (*See* Court's Memorandum of Opinion dated 7/1/02, Docket No. 14.) The current motion followed.

## II. *LAW AND ANALYSIS*

### A. *Standards For Dismissal*

The Defendant has moved to dismiss alleging that the Complaint does not state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). In deciding a motion to dismiss, the allegations in the Complaint are taken as true and viewed in the light most favorable to the Plaintiff. A complaint will not be dismissed "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hiser v. City of Bowling Green,* 42 F.3d 382, 383 (6th Cir.1994),

*cert. denied,* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), *quoting, Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio,* 900 F.2d 882, 885 (6th Cir.1990). The complaint need only give fair notice as to the claim and the grounds upon which it rests. *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993).

Conclusory allegations, however, are not sufficient to state a claim. Rather, a complaint must set forth specific facts which, if proven, would warrant the relief sought. *Sisk v. Levings,* 868 F.2d 159, 161 (5th Cir.1989). In addition, a court is not bound to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986). A court likewise need not accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987).

### B. *The Defamation Claim*

■■■ The Plaintiff alleges that the statements posted by the Defendant on the Yahoo! message board are defamatory. Defamation is a false publication causing injury to a person's reputation, including affecting him adversely in a trade or business. *Snyder v. Ag Trucking, Inc.,* 57 F.3d 484, 489 (6th Cir.1995). The elements of defamation are (1) a false and defamatory statement, (2) unprivileged publication to a third party, (3) a requisite amount of fault on the part of the publisher, and (4) actionability or special harm caused by the statement. *Id., citing, Hahn v. Kotten,* 43 Ohio St.2d 237, 331, 331 N.E.2d 713 (1975); *Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Services, Inc.,* 81 Ohio App.3d 591, 611 N.E.2d 955, 962 (1992); *National Medic Services Corp. v. E.W. Scripps Co.,* 61 Ohio App.3d 752, 573 N.E.2d 1148, 1149–50 (1989).

■■■ The Defendant argues that the statements are not defamatory because they are not "false statements", but rather opinions. Whether or not a statement is an opinion is a question of law for the Court. *Scott v. News–Herald,* 25 Ohio St.3d 243, 250, 496 N.E.2d 699 (1986); *Wampler v. Higgins,* 93 Ohio St.3d 111, 117–120, 752 N.E.2d 962 (2001). The reason is that under Ohio law, the protection of opinions from liability is a form of privilege, and privilege issues generally present legal questions for the Court, not a jury. *Wampler,* 93 Ohio St.3d at 126–27, 752 N.E.2d 962. Accordingly, it is appropriate to decide these issues in the context of a motion pursuant to Rule 12(b)(6).

The standards under Ohio law for analyzing whether statements express opinions or facts were established by the following three cases: *Scott v. News–Herald,* 25 Ohio St.3d 243, 496 N.E.2d 699 (1986); *Vail v. Plain Dealer Publishing Co.,* 72 Ohio St.3d 279, 649 N.E.2d 182 (1995), *cert. denied,* 516 U.S. 1043, 116 S.Ct. 700, 133 L.Ed.2d 657 (1996); and *Wampler v. Higgins,* 93 Ohio St.3d 111, 752 N.E.2d 962 (2001).

In *Scott,* a brawl ensued at a high school wrestling match after a controversial call went against the Maple Heights team. The brawl involved both teams and the crowd, and several people were injured. Hearings were held by the Ohio High School Athletic Association ("OHSAA"), which imposed sanctions on the Maple Heights team. Thereafter, several parents and affected wrestlers challenged the sanctions in Common Pleas Court. Both the superintendent, H. Don Scott, and the wrestling coach, Michael Milkovich, Sr., testified on behalf of the parents and students. The court overturned the sanctions. The day after the court's order, the News–Herald, a local paper, published a column essentially stating that Scott and

Milkovich lied during the court proceedings to defeat the sanctions. *Scott,* 25 Ohio St.3d at 243–44, 496 N.E.2d 699.

Scott sued the paper for defamation, and the case ultimately reached the Ohio Supreme Court. After a lengthy discussion, the Ohio Supreme Court held that the statements were opinions and, therefore, not actionable as defamation. The Court stated that the analysis of whether a statement expresses a false fact or opinion must be based on the totality of the circumstances, focusing on the following four factors: (1) the specific language used; (2) whether the statement is verifiable; (3) the written context of the statement; and (4) the broader social context in which the statement is made. *Id.* at 250, 496 N.E.2d 699.

The Court concluded that the first two factors favored liability. With respect to the specific language, the Court stated that a reasonable person reading the statements in isolation would conclude that Scott had perjured himself. The Court also concluded that whether perjury had been committed was verifiable. Two facts favored this conclusion. Statements are deemed verifiable if: (1) the author represents that he has first-hand knowledge which substantiates the statements, and (2) if there is a plausible method to verify what was said. Because the perjury allegations could be verified through a review of the transcripts and evidence adduced at public judicial proceedings, the Court concluded that the statements were factual in nature. *Id.* at 250–52, 496 N.E.2d 699.

The Court concluded, however, that the third and fourth factors weighed against liability. The Court first looked to the context of the alleged defamation, which involved considering the statements at issue in light of other statements in the article. Specifically, the Court found that the author made statements indicating that his conclusions were based largely on subjective criteria, not facts. Other language indicated that what the author meant by a "lie" was his characterization of the school's refusal to admit full culpability, and not perjury in the legal sense. The Court next looked to the broader context of the statements, like where they appeared and how they were published. The Court particularly noted that the article appeared in a sports page column, "a traditional haven for cajoling, invective, and hyperbole". Thus, a reasonable reader would not construe the article as containing "legal conclusions" about matters like perjury. The Court concluded that, balancing these factors, the statements could not support a defamation claim as a matter of law. *Id.* at 252–54, 496 N.E.2d 699.

Subsequently, the analysis in *Scott* became questionable by a separate case involving the *identical* statements. Milkovich, the wrestling coach, brought his own lawsuit for defamation which ultimately went before the United States Supreme Court. *See Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). Despite the previous ruling by the Ohio Supreme Court, the United States Supreme Court found that the First Amendment did not preclude a defamation claim. It concluded that the First Amendment did not provide blanket protection to statements that could be characterized a "opinions". Thus, the analysis under the First Amendment is not simply the characterization of statements as fact or opinion, but whether the statements reasonably imply false and defamatory facts. *Id.* at 21, 110 S.Ct. 2695. The Court concluded that justiciable issues existed as to whether the newspaper was liable. *Id.* at 23, 110 S.Ct. 2695.

Thus, by virtue of *Scott* and *Milkovich,* the Ohio Supreme Court and the United States Supreme Court came to opposite

conclusions as to whether the identical statements could be the basis for a defamation claim. The apparent inconsistency was resolved in *Vail v. Plain Dealer Publishing Company*, 72 Ohio St.3d 279, 649 N.E.2d 182 (1995), *cert. denied*, 516 U.S. 1043, 116 S.Ct. 700, 133 L.Ed.2d 657 (1996). There, the Ohio Supreme Court stated that *Scott* applied the Ohio Constitution, while *Milkovich* applied only the United States Constitution. The Ohio Supreme Court stated:

> Regardless of the outcome in *Milkovich*, the law in this state is that embodied in *Scott*. The Ohio Constitution provides a separate and independent guarantee of protection for opinion ancillary to freedom of the press.

*Vail*, 72 Ohio St.3d at 281, 649 N.E.2d 182. The Court then confirmed the factor analysis set forth in *Scott* as described above, emphasizing whether a statement should be characterized as fact or opinion. *Id.* at 281–83, 649 N.E.2d 182. The Ohio Supreme Court continues to hold that the Ohio Constitution provides protection independent of the First Amendment, and recognizes the *Scott* analysis as the method for analyzing defamation claims. *See Wampler v. Higgins*, 93 Ohio St.3d 111, 117–120, 752 N.E.2d 962 (2001); *McKimm v. Ohio Elections Commission*, 89 Ohio St.3d 139, 144–45, 729 N.E.2d 364 (2000), *cert. denied*, 531 U.S. 1078, 121 S.Ct. 776, 148 L.Ed.2d 674 (2001). In *Wampler*, the Court further held that the *Scott* analysis applies to all defamation claims, not just those involving media defendants. 93 Ohio St.3d at 120–25, 752 N.E.2d 962.

 This Court, therefore, concludes that the *Scott* analysis applies to the Plaintiff's defamation claim. Accordingly, the Court must decide, under the totality of the circumstances, whether the statements at issue express facts or opinions using the following four factors: (1) the specific language used; (2) whether the statement is verifiable; (3) the written context of the statement; and (4) the broader social context in which the statement is made. In weighing these factors, the Court views the statements from the standpoint of a reasonable reader, and does not consider the subjective intent of the author. *McKimm*, 89 Ohio St.3d at 144–45, 729 N.E.2d 364.

 The first factor is the specific language used. The words used are to be afforded their common and ordinary meaning. *Scott*, 25 Ohio St.3d at 250, 496 N.E.2d 699; *Wampler*, 93 Ohio St.3d at 127, 752 N.E.2d 962. The Court must consider whether the words used normally convey information of a factual nature, or hype and opinion. Words lacking precise meaning ordinarily are not actionable. *Vail*, 72 Ohio St.3d at 282–83, 649 N.E.2d 182; *Wampler*, 93 Ohio St.3d at 127–28, 752 N.E.2d 962.

The Plaintiff alleges that the Defendant falsely accused it of accounting fraud, and improperly stated that such fraud is the subject of an FBI and SEC probe. The Defendant indeed used the words "accounting fraud", which certainly conveys wrongdoing. The language about the purported investigation is less precise: "*Get ready for* [emphasis added] and [sic] SEC and FBI Probe." This statement has dual interpretations. When viewed in isolation, these words may convey knowledge of an upcoming investigation, but also may imply a subjective prediction. The phrase "SPX = Massive SEC and FBI Investigation" is more direct, but also is figurative in nature. On the whole, the Court concludes that the language used favors the Plaintiff.

 The second factor is whether the statements are verifiable. A statement is deemed verifiable if: (1) the author represents that he has knowledge or evidence that substantiates the statements, and (2) there is a plausible method to verify the

statements. *Scott,* 25 Ohio St.3d at 251–52, 496 N.E.2d 699; *Vail,* 72 Ohio St.3d at 283, 649 N.E.2d 182; *Wampler,* 93 Ohio St.3d at 129, 752 N.E.2d 962. Here, the Defendant gives no indication that he possesses materials that can substantiate his statements. The statements are simply made in isolation. In addition, although it is theoretically possible to verify whether their exists an FBI and SEC investigation, certainly the readers themselves would not have this capability. This case, therefore, differs from *Scott,* in which the judicial proceedings were part of the public record. For these reasons, the second factor weighs against the Plaintiff.

The third factor is the context of the statements, which requires consideration of the alleged defamation in the context of other accompanying statements. Cautionary terms or "language of apparency" weigh against liability. *Scott,* 25 Ohio St.3d at 252, 496 N.E.2d 699; *Wampler,* 93 Ohio St.3d at 130, 752 N.E.2d 962. Also important is the tenor, including whether the statements appear in a piece characterized by objective facts or subjective hyperbole. *Vail,* 72 Ohio St. at 282, 74 N.E. 183. First, the Court notes that the postings provide an investment opinion on SPX stock: "Long–Term Sentiment: Strong Sell". Indeed, the purpose of the posting is to give such an investment opinion. Furthermore, the tenor of the postings is not consistent with professional investment advice. In describing the Plaintiff, the Defendant uses the term "TIMBER!!!!!", clearly a figurative hyperbole. He also describes the Plaintiff as having "shit businesses and cooking the books", hardly the language of reliable investment advice. Even his screen name, "neutronb", diminishes his credibility. In context, a reasonable reader would view the statements as the author's subjective characterizations, and not as reliable facts.

Fourth, the Court must consider the broader social context in which the statements appear. Under this factor, the Court considers the type of writing and the placement of the statements: "different types of writing have ... widely varying social conventions which signal to the reader the likelihood of a statement's being either fact or opinion [citations omitted]." *Scott,* 25 Ohio St.3d at 253, 496 N.E.2d 699. Statements appearing in such locations as forum and commentary newspaper sections, or other venues often associated with "cajoling, invective, and hyperbole", are more likely opinion. *Id.; Vail,* 72 Ohio St.3d at 282, 649 N.E.2d 182; *Wampler,* 93 Ohio St.3d at 131, 752 N.E.2d 962. Here, the Defendant's statements were posted on an Internet message board. Such message boards are accessible to anyone of the tens of millions of people in this country (and more abroad) with Internet access, an no one exerts control over the content. Pseudonym screen names are the norm. A reasonable reader would not view the blanket, unexplained statements at issue as "facts" when placed on such an open and uncontrolled forum. Indeed, Yahoo! places a disclaimer which appears on the copies of the postings submitted with the Complaint:

> **Reminder:** This board is not connected with the company. These messages are only the opinion of the poster, are no substitute for your own research, and should not be relied upon for trading or any other purpose.... For more information regarding investments and the Internet, please visit the SEC Website.

Accordingly, the fourth factor weighs against the Plaintiff.

Under the totality of the circumstances, the Court concludes that a balance of the *Scott* factors requires dismissal of the Plaintiff's Complaint. In so ruling, the Court cautions that there is no blanket

protection for statements made on an Internet message board. In certain contexts, allegations of accounting fraud or the existence of government investigations may be the basis of a defamation claim. Here, however, no liability attaches as a matter of law.

The Defendant's postings are fraught with figurative language and hyperbole. His anonymous screen name, "neutronb", conveys an unprofessional background. He gives no indication that he has any special knowledge or evidence to support his statements, and thus they are unverifiable to any reasonable reader. The statements appear on an open message board with an explicit warning that any postings represent the opinions of the given author, bear no connection to the company, and should not be relied upon for investment advice or "any other purpose". The postings also contain an investment opinion to sell the Plaintiff's stock.[2] Under these circumstances, the Court concludes that a reasonable reader would view these statements as the Defendant's opinions, not facts.

The Plaintiff relies on *Milkovich, supra.* As stated above, however, Ohio courts have recognized broader protection under the Ohio Constitution than the First Amendment as applied in *Milkovich.* In addition, even under the *Milkovich* standard, the Plaintiff's claim should be dismissed.

In *Biospherics, Inc. v. Forbes, Inc.,* 151 F.3d 180 (4th Cir.1998), the Fourth Circuit applied *Milkovich* to statements similar to those at issue here. The alleged defamation appeared in a regularly published investment advice column appearing in *Forbes* magazine. The column characterized the Plaintiff's stock as "overvalued".

The article disparaged the lengthy development process of a sugar substitute being developed by the Plaintiff:

> So why is the stock, at a recent 7, trading at 125 times trailing 12–month profits? Hype and hope for a natural, noncaloric sugar substitute—called Sugaree—that the company's been "developing" for 15 years.... Investors will sour on Biospherics when they realize that Sugaree isn't up to the company's claims.... Biospherics shares are easy to borrow; the few independent analysts who follow the company think its stock is worth $2 on current business.

*Id.* at 182.

The Fourth Circuit applied *Milkovich* to determine whether the statements could be the basis of a defamation claim. The factors to consider included whether loose, figurative, or hyperbolic language was used, and the context and general tenor of the article. *Id.* at 184. The Court concluded that the column was protected speech. It noted that the author made no claim of first-hand knowledge or evidence in support of the statements. The column had a "breezy tone" and appeared in a column called "Streetwalker". It contained a "buy-sell" indication of the author's opinion on future stock performance. When viewed in this context, the statements could not support a defamation claim:

> The context and tenor of the article thus suggest that it reflects the writer's subjective and speculative supposition. We do not propose a "doctrinal exemption" for stock tip articles. But rarely would a stock tip article of this tenor and in this context prove actionable. [Citations omitted.]

---

**2.** The Court notes that the Complaint alleges damages only in the most general and conclusory sense. There are no specific factual allegations that the Defendant's statements actually caused the stock price to fall, caused other economic damage, or that anyone even relied upon them.

*Id.* The statements at issue in the current case are comparable in tenor and context to those in *Biospherics.* Indeed, the Defendant's position here is even stronger, given that the statements appeared on an open, uncontrolled Internet message board, rather than in a prominent business magazine. *See also Nicosia v. De Rooy,* 72 F.Supp.2d 1093, 1101 (N.D.Cal.1999) (statements published through Internet discussion groups are less likely to be viewed as factual assertions).

The Plaintiff also relies on *McKimm, supra,* which applies the *Scott* analysis. In *McKimm,* the Court held that a political pamphlet could support a defamation claim. The pamphlet included a cartoon showing an individual passing money under a table, implying that a candidate had accepted bribes while acting as a township trustee. The cartoon was accompanied by the following statement: "Randy Gonzalez ignored bidding policy. He voted to contract an architect for $51,000 to design the Social Hall (pavilion) without taking bids." In addition, the pamphlet invited voters to call for "documentation" in support of the charges, and provided a phone number. *McKimm* is inapplicable here. Paramount to the decision was the statement that evidence existed to support the charge. No such statement was made in the current case.

The Plaintiff also relies on lower court cases from Ohio generally demonstrating that allegations of wrongdoing can constitute defamation. *See, e.g., Sneary v. Baty,* 128 Ohio App.3d 142, 713 N.E.2d 1145 (1998); *North Coast Cable Limited Partnership v. Hanneman,* 98 Ohio App.3d 434, 648 N.E.2d 875 (1994) (the Court notes that this case is pre-*Vail*). The Court concludes that the statements and contexts in these cases are not sufficiently comparable to be applicable here.

III. *CONCLUSION*

For the foregoing reasons, the Defendant's Motion To Dismiss (Docket No. 18) is GRANTED. Accordingly, this action is hereby dismissed with prejudice, each party to bear its own costs.

IT IS SO ORDERED.